**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHANA FOGARTY,<br><br>    Plaintiff,<br><br>    v.<br><br>NEWARK BOARD OF EDUCATION, and JOHN DOES 1-10,<br><br>    Defendants. | No. 21cv16190 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

In this case, Plaintiff Johana Fogarty ("Plaintiff") claims her former employer, Newark Board of Education ("Defendant"), unlawfully discriminated against her because of her pregnancy and subsequent maternity leave. D.E. 1-2 ("Compl." or "Complaint"). Defendant now moves for partial summary judgment on Plaintiff's less favorable treatment claim under the New Jersey Law Against Discrimination (Count Three), Plaintiff's interference and retaliation claims under the New Jersey Family Leave Act (Counts Six and Seven) and the federal Family Medical Leave Act (Counts Eight and Nine), and Plaintiff's request for certain equitable relief (Count Ten). D.E. 31 ("Mot." or "Motion"). The Court decides the Motion on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, Defendant's Motion will be **GRANTED in part** and **DENIED in part**. Therefore, Counts Three and Six through Nine will be **DISMISSED with prejudice**, but Count Ten will not be dismissed.

I.      **BACKGROUND**[1]

    A.  **Factual Background**[2]

    *1.  Plaintiff's employment*

Plaintiff, Defendant's former employee, began working for Defendant as a Department Chair of Science and Career in Technology ("Department Chair") at the Technology High School on August 12, 2019.  Def. SOF ¶¶ 1 & 2; Pl. Reply to Def. SOF ¶¶ 1 & 2.  "As the Department Chair, Plaintiff supervised fifteen . . . teachers and was responsible for coaching, peer learning communities, one-on-one meetings with students, fundraising, coordinating field trips, observations[,] and evaluations."  Def. SOF ¶ 6; Pl. Reply to Def. SOF ¶ 6.  Plaintiff was supervised by the school's principal, Edwin Reyes ("Principal Reyes").  Def. SOF ¶¶ 3-5; Pl. Reply to Def. SOF ¶¶ 3-5.

Throughout her employment, Plaintiff received two performance reviews, first in December 2019 and then in April 2020.  Def. SOF ¶¶ 13 & 28; Pl. Reply to Def. SOF ¶¶ 13 & 28.  In these reviews, Plaintiff received "Partially Effective" ratings due to cited factors such as lacking time management skills, failing to complete teacher observations by the deadlines, and failing to properly document her informal visits with teachers she was responsible for observing. Def. SOF ¶¶ 13-17, 28; Pl. Reply to Def. SOF ¶¶ 13-17, 28.  "[E]ven though [Plaintiff] received a 'Partially Effective' rating[,]" around April 2020, "Principal Reyes advised Plaintiff that she would be renewed for the 2020-2021 school year . . . ."  Def. SOF ¶ 30; Pl. Reply to Def. SOF ¶ 30.

---

[1] This section derives mainly from the parties' statements of material fact.  *See* D.E.s 31-3 ("Def. SOF"), 33 at 1-5 ("Pl. Reply to Def. SOF"), 33 at 5-9 ("Pl. SOF").
[2] The facts are undisputed unless otherwise noted.

*2. Plaintiff's pregnancy and maternity leave*

Around January 2020, Plaintiff returned from winter break and informed Principal Reyes that she was pregnant.  Def. SOF ¶ 22; Pl. Reply to Def. SOF ¶ 22.  On July 7, 2020, Plaintiff requested a maternity leave of absence from August 12, 2020, to October 20, 2020, which was approved.  Def. SOF ¶ 47; Pl. Reply to Def. SOF ¶ 47.  On September 3, 2020, Plaintiff requested a twelve-week extension of her maternity leave, which was approved as leave under the Family Medical Leave Act; Plaintiff was scheduled to return to work on January 21, 2021. Def. SOF ¶¶ 49-50; Pl. Reply to Def. SOF ¶¶ 49-50.  Then, on December 28, 2020, Plaintiff requested to extend her maternity leave to August 31, 2021, which was also approved.  Def. SOF ¶¶ 51-52; Pl. Reply to Def. SOF ¶¶ 51-52.

While Plaintiff was on maternity leave, Principal Reyes and another supervisor completed Plaintiff's responsibilities.  Def. SOF ¶ 58; Pl. Reply to Def. SOF ¶ 58.

*3. Plaintiff's non-renewal*

On May 14, 2021, "Plaintiff was advised that [her employment] w[ould] not be renewed for the 2021-2022 school year due to economic reorganization and unsatisfactory performance." Def. SOF ¶ 70; Pl. Reply to Def. SOF ¶ 70.  The parties dispute the underlying reasons behind Plaintiff's non-renewal.

Defendant claims that Plaintiff's non-renewal was a result of (1) the school's economic reorganization caused by the COVID-19 pandemic, which made it "difficult [to] monitor[] the students and teachers[,]" Def. SOF ¶ 59, and to "cover [Plaintiff's] workload and responsibilities at the high school[,]" *id.* ¶ 60; and (2) Plaintiff's prior poor performance reviews and "Partially Effective" ratings, *id.* ¶¶ 13-17, 28.

Plaintiff claims that Defendant's proffered explanations are pretexts for discrimination. First, as to the school's economic reorganization, Plaintiff cites that Defendant "filled [Plaintiff's] exact same position with another candidate" with a higher salary, Pl. SOF ¶ 30, and that this replacement "did not start until October 2021, a time by which Plaintiff would have been available to return from leave[,]" *id.* ¶ 31. Second, as to Plaintiff's alleged poor performance, Plaintiff claims her "Partially Effective" ratings were "not consider[ed] . . . a bad thing." *Id.* ¶ 11. In support, Plaintiff cites to Principal Reyes' deposition:

> Q: You said partially effective isn't always a bad thing. Did you consider it to be a bad thing with regard to Ms. Fogarty?
>
> A: No, it's just a rating she got. Obviously we asked her to come back the following year so it was not.

D.E. 33 Ex. B ("Reyes Dep."), 26:14-18; *see also* Pl. SOF ¶ 11.

Rather, Plaintiff claims, her employment was not renewed due to Defendant's discrimination against Plaintiff because of her pregnancy and subsequent maternity leave. Plaintiff states that in conversations with Principal Reyes prior to her maternity leave, Principal Reyes expressed concerns about Plaintiff's ability to simultaneously handle a newborn baby and her job as Department Chair. *See, e.g.*, Pl. SOF ¶¶ 6-8 (first citing D.E. 33 Ex. A ("Pl. Dep."), 48:16-49:2 & 49:7-12; then citing Reyes Dep. 21:9-22:2). Plaintiff also references a May 20, 2020, "virtual meeting during which Principal Reyes publicly asked her if she was still pregnant[,]" *id.* ¶ 14 (citing Pl. Dep. 54:24-5), and Nelson Tejada, the vice principal ("Vice Principal Tejada"), "used odd and off-putting metaphors to pregnancy in order to discuss leadership[,]" *id.* ¶ 15 (citing Pl. Dep. 56:9-20). These remarks prompted Plaintiff to "lodge[] an internal Affirmative Action complaint [where she] explained the harassment that she had

experienced in the school." *Id.* ¶ 16 (citing Pl. Dep. 71:17-72:5).[3]  Lastly, Plaintiff's coworker Krystal Hargrave "recall[ed] overhearing a conversation between [Principal] Reyes and [Vice Principal] Tejada 'in which they stated that they checked to see if young female applicants had an engagement ring because they did not want to hire anyone who they thought might use pregnancy leave in the near future.'" *Id.* ¶ 19 (quoting D.E. 33 Ex. C ("Hargrave Certif."), ¶ 9).

### B. Procedural Background

Plaintiff filed this action in state court against Defendant, bringing a total of ten claims: (1) five claims under the New Jersey Law Against Discrimination ("NJLAD"), including a claim of less favorable treatment on the basis of pregnancy (Count Three)[4]; (2) two claims under the New Jersey Family Leave Act ("NJFLA") for interference and retaliation (Counts Six and Seven); (3) two claims under the Family Medical Leave Act ("FMLA") for interference and retaliation (Counts Eight and Nine); and (4) a claim for equitable relief (Count Ten).  *See* Compl. ¶¶ 47-72.  Defendant removed pursuant to diversity jurisdiction.  D.E. 1.

Defendant now moves for partial summary judgment on Count Three and Counts Six through Ten.  *See* Mot.  Plaintiff stipulates to the dismissal of Count Three[5] but opposes as to Counts Six through Ten.  D.E. 33 ("Opp'n" or "Opposition").  Defendant replies.  D.E. 32 ("Reply").

## II.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[3] Ultimately, there was "'No Finding' of harassment and the complaint was dismissed."  Def. SOF ¶ 41; Pl. Reply to Def. SOF ¶ 41.

[4] The other NJLAD claims are pregnancy discrimination (Count One), pregnancy reprisal (Count Two), reprisal (Count Four), and discrimination in the course of contract (Count Five).

[5] *See* D.E. 33 at 10.

R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over nonmaterial facts will not preclude a court from granting summary judgment.  *See id.*

The moving party has the initial burden of showing the basis for its motion and demonstrating that there is an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must support its motion by citing to specific materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).

If a moving party adequately supports its motion, then the burden shifts to the nonmoving party to "go beyond the pleadings" and designate specific facts on the record that demonstrate a genuine dispute for trial exists.  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  Specifically, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to provide such evidence, or where the "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment."  *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50).  However, "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  But

6

if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 322.

## III.   ANALYSIS

### A.  The Court Will Dismiss the FMLA and NJFLA Claims

The FMLA and NJFLA provide an eligible employee twelve weeks of protected leave, subject to varying conditions, for the employee to care for a family member with a "serious health condition."   29 U.S.C. § 2611(2)(A); N.J.S.A. 34:11B-4.   "[C]ourts apply the same standards and framework to claims under the FMLA and NJFLA."  *Wolpert v. Abbot Labs.*, 817 F. Supp. 2d 424, 437 (D.N.J. 2011) (citing *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 596 (D.N.J. 2006)).

Plaintiff brings unlawful interference and retaliation claims under the NJFLA (Counts Six and Seven) and the FMLA (Counts Eight and Nine).  The Court will grant summary judgment to Defendant on all four counts.

### 1.  *The interference claims fail because Plaintiff was unable to return to work upon the expiration of her twelve weeks of protected leave*

The FMLA and NJFLA make it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's rights under the statutes.   29 U.S.C. § 2615; N.J.S.A. 34:11B-9(a).   To succeed on an interference claim, a plaintiff must establish: (1) the plaintiff is an eligible employee, (2) the defendant is an employer subject to the statute, (3) the plaintiff was entitled to leave, (4) the plaintiff notified the defendant of their intention to take leave, and (5) the defendant denied the plaintiff the benefits they were entitled to.  *Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002).

Plaintiff brings interference claims under the NJFLA (Count Six) and the FMLA (Count Eight), alleging that "the non-renewal of her contract constitutes interference . . . ." Compl. ¶¶ 43-44.  Defendant argues, in part, that these claims must be dismissed because Defendant could not have deprived Plaintiff of her right to protected leave because Defendant "granted all three of [Plaintiff's] requests for leave." Mot. at 12-13.  But Defendant misconstrues Plaintiff's argument, as she argues she was deprived of her right to reinstatement upon the expiration of her leave, not that her requests were denied. *See, e.g.*, Opp'n at 12; *see also Parker*, 234 F. Supp. 2d at 485 (noting FMLA rights can, in some instances, extend to reinstatement "to the same or an equivalent position").

However, the Court agrees with Defendant that Plaintiff's right to reinstatement expired after Plaintiff exceeded her twelve weeks of protected leave.  Reply at 4-5.  Once a plaintiff exceeds their protected leave and is unable to return to their position—such as by taking additional leave—the defendant can lawfully terminate Plaintiff's employment. *See Katekovich v. Team Rent a Car of Pittsburgh, Inc.*, 36 Fed. App'x 688, 690 (3d Cir. 2002) ("If the employee is not able to return to work after [the] twelve weeks [provided by statute], . . . the employer may terminate the employee."); *Kancherla v. Lincoln Tech. Inst., Inc.*, 2018 WL 922126, at *9 (D.N.J. Feb. 15, 2018) (same).

Here, it is undisputed that Plaintiff was unable to, and indeed did not, return to work upon the expiration of her protected leave.  Plaintiff's twelve weeks of protected leave ran from September 3, 2020, to January 21, 2021.  Def. SOF ¶¶ 49-50; Pl. Reply to Def. SOF ¶¶ 49-50. However, Plaintiff then requested and received an extension of her maternity leave until August 31, 2021.  Def. SOF ¶¶ 51-52; Pl. Reply to Def. SOF ¶¶ 51-52.  Thus, Defendant's subsequent

non-renewal of Plaintiff's contract does not constitute interference.  *See Katekovich*, 36 Fed. App'x at 690; *Kancherla*, 2018 WL 922126, at *9.

Accordingly, the Court will grant Defendant's Motion as to Plaintiff's NJFLA and FMLA interference claims (Counts Six and Eight).

> 2.  *The retaliation claims also fail because Plaintiff was unable to return to work upon the expiration of her twelve weeks of protected leave*

The FMLA and NJFLA also make it unlawful for an employer to "discriminat[e] against employees and prospective employees who have taken" protected leave under the statutes. *Wolpert*, 817 F. Supp. 2d at 439 (first citing 29 U.S.C.  2615(a)(2); then citing N.J.S.A. 34:11B-9).  When analyzing retaliation claims, courts apply a burden-shifting framework.  First, to establish a *prima facie* retaliation claim, a plaintiff must demonstrate that (1) they are protected under the statute, (2) they suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of their statutory rights.  *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).  If established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).  If successful, the burden shifts back to the plaintiff to demonstrate "that the employer's proffered reason is only pretext and that the employer's real reason for the adverse action was to retaliate against the employee for taking [protected] leave." *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 122 (D.N.J. 2020).  The plaintiff "must point to evidence sufficient to create an inference that a causative link exists between her [protected] leave and her termination."  *Id.* at 123 (cleaned up).

Plaintiff's retaliation claims fail "for the same reasons h[er] interference claim[s] fail: [s]he has not shown [s]he was retaliated against for invoking a protected right because the [protected] leave time [s]he sought to use had already been exhausted."  *Id.*; *see also Katekovich*,

36 Fed. App'x at 690-91 (citing *Cehrs v. Ne. Ohio Alzeheimer Rsch. Ctr.*, 155 F.3d 775, 784-85 (6th Cir. 1998)) (finding no FMLA violation where the employee could not return to work within the protected leave period); *Jezek v. Medco Health Sols., Inc.*, 2012 WL 209372, at *8 (D.N.J. Jan. 24, 2012) ("The fact that [plaintiff] was terminated shortly after he exceeded his FMLA leave cannot serve to establish a prima facie case of retaliation because [defendant] had the right to terminate [plaintiff] as soon as he exceeded his twelve weeks of leave."); *Smith v. Medpointe Healthcare, Inc.*, 338 Fed. App'x 230, 234 n.8 (3d Cir. 2009) (affirming summary judgment for the employer on plaintiff's retaliation claim and noting that plaintiff could not establish causation where "[h]er FMLA leave ended more than a year earlier[]" than her termination).

Accordingly, the Court will grant Defendant's Motion as to Plaintiff's NJFLA and FMLA retaliation claims (Counts Seven and Nine).

### B.  The Court Will Not Dismiss Plaintiff's Claim for Equitable Relief

The NJLAD[6] provides that "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs . . . ." N.J.S.A. 10:5-13(b). "Ordinarily, a plaintiff who prevails in an employment discrimination case is made whole by a backpay award coupled with an order for reinstatement." *DeSanto v. Rowan Univ.*, 224 F. Supp. 2d 819, 832 (D.N.J. 2002). However, in some cases, reinstatement "may not be possible where no suitable position exists at the time of judgment, or the animosity between the parties is such that reinstatement is impracticable." *Id.* "It is the Court's responsibility to decide whether reinstatement or front pay is the appropriate remedy." *Id.* (citing *Feldman v. Phila. Housing Auth.*, 43 F.3d 823, 831-32 (3d Cir. 1994)). "If reinstatement is the proper remedy, the issue of front pay will not be submitted to the jury, because to award both would be . . . a double recovery." *Id.* (citing *Feldman*, 43 F.3d

---

[6] Because the Court will dismiss Plaintiff's NJFLA and FMLA counts, Plaintiff can only recover equitable relief as to her remaining NJLAD claims.

at 831-32).  However, if the Court finds that front pay is the proper remedy, the jury will then determine the amount of damages.  *Id.*; *see also Quinlan v. Curtiss-Wright Corp.*, 425 N.J. Super. 335, 351 (App. Div. 2012) (stating that New Jersey case law "has treated front pay as a remedy that may be awarded by a jury").

Plaintiff seeks, in part, the equitable remedies of reinstatement, back pay, and front pay. *See* Compl. ¶¶ 64-72.  Defendant argues that Plaintiff's recovery should be limited to monetary damages because "if [Plaintiff is] successful, Plaintiff's damages would be properly remedied monetarily."  Mot. at 21.  However, Defendant fails to cite any evidence that reinstatement is not appropriate or feasible.  *See id.*  Thus, the Court will maintain Count Ten of the Complaint, reserving all issues of the proper remedy were Plaintiff to prevail on her NJLAD claims.

Accordingly, the Court will deny summary judgment as to Plaintiff's claim for equitable relief (Count Ten).

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion will be **GRANTED in part** and **DENIED in part**.  Therefore, Counts Three and Six through Nine will be **DISMISSED with prejudice**, but Count Ten will not be dismissed.   An appropriate Order accompanies this Opinion.


Dated: March 28, 2024

Evelyn Padin, U.S.D.J.